# RUNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 22-cv-00993 |
| | ) | |
| DATACAMP LIMITED d/b/a/ | ) | Honorable John F. Kness |
| CDN77 and Datapacket, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant DataCamp Limited d/b/a CDN77 and Datapacket ("DataCamp"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss Dish Network L.L.C.'s ("Plaintiff") Complaint (the "Motion").

## I.  INTRODUCTION

This case is not about any actual wrongdoing on the part of DataCamp, but instead represents Plaintiff's attempt to gain tactical leverage over the individuals it alleges have directly infringed its claimed copyrights. Indeed, Plaintiff's Complaint fails to assert any cognizable claim that DataCamp directly infringed its copyrights. Instead, Plaintiff seeks to impose unprecedented liability upon DataCamp for various third parties' streaming of content which allegedly infringes on Plaintiff's copyrights, and for which DataCamp has no knowledge of and does not control.

Specifically, Plaintiff raises two claims against DataCamp for contributorily (Count I) and/or vicariously (Count II) infringing on Plaintiff's copyrights. Both claims fail and should be

dismissed because Plaintiff fails to allege the literal elements required for each claim and further fails to incorporate any factual allegation which, if true, would impute any liability on DataCamp.

For its contributory infringement claim, Plaintiff must, but fails to allege that DataCamp knew of the alleged infringing activity and substantially participated in the infringement by monitoring and controlling the infringing content. Plaintiff, however, admits it is *impossible* for DataCamp to possess the required knowledge of or any ability to monitor the alleged infringement because all customer content utilizing DataCamp's servers is encrypted. Accordingly, there is no rational basis for the Count I claims, which must be dismissed.

For its vicarious infringement claim, Plaintiff must, but again fails to allege that DataCamp has both the right and ability to supervise the allegedly infringing conduct and that it receives a direct financial interest as a result of the infringement. Plaintiff fails to identify any method for DataCamp to supervise the alleged infringement which has not already been held to be too imprecise, overbroad, or unworkable. Plaintiff also fails to allege that DataCamp receives any direct financial benefit as a result of the alleged infringement or that the payments it receives to utilize its servers from its allegedly infringing customers differ in any way from payments received by any of its other customers. Because these critical elements are lacking, the Count II claims must be dismissed as well.

Plaintiff's claims hardly present a matter of first impression for this Court, but instead must be dismissed under well-established case law. Indeed, the Southern District of Florida recently dismissed claims in a nearly identical matter against a defendant offering its customers the same services as DataCamp. That decision was upheld following the plaintiff's motion for reconsideration and no appeal was taken. So dismissal here is well within recent precedent in this Court and in other courts across the country.

Finally, given that the facts necessary to support Plaintiff's claims simply do not exist, amendment of the Complaint would be futile. Accordingly, the Complaint should be dismissed with prejudice.

## II.  BACKGROUND[1]

On February 25, 2022, Plaintiff filed its Complaint against DataCamp, claiming that DataCamp contributorily and vicariously infringed the copyrights of its protected works pursuant to 17 U.S.C. § 501. (Complaint ¶¶ 76–91.) The allegations in the Complaint arise out of internet users' ("end-users") alleged unauthorized reproduction and dissemination of purportedly infringing content which certain customers of DataCamp, whom Plaintiff has dubbed "Pirate Services," stream on the internet using DataCamp's servers. (Complaint ¶ 6.) Instead of seeking out the alleged infringers of its works, Plaintiff attempts to assert that DataCamp "materially assists" the alleged Pirate Services' infringement, (Complaint ¶ 6), and, in the process, conflates the two separate businesses named in this action: CDN77 and DataPacket, (Complaint ¶ 9.)

First, *and wholly unimplicated by any alleged infringement in Plaintiff's Complaint*,[2] DataCamp operates CDN77—a content delivery network. CDN77 provides its customers with end-to-end solutions to aid with their video processing needs and the network to deliver content to customer's end-users.[3] (Complaint ¶¶ 4, 36.)

---

[1] This Section is merely provided to illuminate the Court as to the background of DataCamp's business operations. DataCamp does not, and need not, rely on any statements made within this Section to establish that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

[2] The Complaint does not attempt to distinguish between CDN77 and DataPacket and also fails to, *and cannot*, allege that any of the alleged Pirate Services are or were customers of CDN77. (Complaint ¶¶ 6, 53 (listing Banjo TV; Bollywood IPTV; Comstar TV; Express IPTV; Gennie TV; Gold TV; IPGuys; Istar; Red IPTV; Sky IPTV; and Zumm TV as the alleged Pirate Services).)

[3] Plaintiff frequently cites to promotional material it attributes to DataCamp attempting to attract infringing customers, but each and every web address is from the CDN77 domain. (*See* Complaint ¶¶ 25 & n.4, 26 & n.6–8, 27 & n.9, 28 & n.10, 29 & n.11, 30 & n.12, 31 & n.13, 32 & n.14, 33 &

Second, DataCamp operates DataPacket—a server and connectivity provider offering its customers a geographically distributed group of servers which work together to provide fast delivery of large volumes of content across the internet. (Complaint ¶ 25.) DataPacket does not provide any video processing services to its customers. These servers are connected to the internet and DataPacket's customers utilize them for numerous purposes, including web hosting, videogaming, cloud computing, and streaming. DataPacket's many subscribers, including the alleged Pirate Services, (*id.*), install and maintain their own software on DataPacket's network. DataPacket is only responsible for ensuring that its network stays connected to the internet. DataPack has no access, let alone involvement, with the software those subscribers install. (Complaint ¶ 39.) Nor does DataPacket maintain any access to the material displayed or viewed by end-users of its network, which is completely encrypted. (*Id.*) Because DataPacket is merely a server provider, it has no more involvement in the alleged infringement than a hardware manufacturer providing a direct infringer with computers and routers, a power utility company providing a direct infringer with electricity, or a web-hosting service providing a direct infringer with a web address.

## III.    <u>ARGUMENT</u>

Plaintiff improperly raises two claims against DataCamp for infringing its copyrights. As to Plaintiff's claim that DataCamp contributorily infringed its copyrights (Count I), the Complaint fails to allege that DataCamp was aware of any specific infringing material. As to Plaintiff's claim that DataCamp vicariously infringed its copyrights (Count II), the Complaint fails to allege that DataCamp received a direct financial interest or has the practical ability to supervise the infringing

---

n.15–16, 34 & n.17–18, 37 & n.19, 38 & n.20, 39 & n.21, 42 & n.22, 43 & n.23–25, 44 & n.26, 64 & n.27.)

activity. Because Plaintiff's claims are each fatally flawed, the instant motion should be granted and the Complaint should be dismissed with prejudice.

## A.     The Standard on Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a claim which "fail[s] to state a claim upon which relief can be granted." In ruling on a motion to dismiss, this Court must construe the complaint "in the light most favorable to the nonmoving party, accept[ing] well-pleaded facts as true, and draw[ing] all inferences in [Plaintiff's] favor." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## B.     Count I of Plaintiff's Complaint for Contributory Copyright Infringement Fails to State a Claim and Must be Dismissed with Prejudice

A defendant is liable for contributory copyright infringement only where it, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Myers v. Harold*, 279 F. Supp. 3d 778, 796 (N.D. Ill. 2017) (citation omitted); *see also Sony Corp. of Am. v. Universal City Studios Inc.*, 464 U.S. 417, 437 (1984) (defining a contributory infringer as one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner"). "Participation by the defendant must be substantial." *Marobie-Fl., Inc. v. Nat. Ass'n of Fire Equip. Distribs.*, 983 F. Supp. 1167, 1178 (N.D. Ill. 1997). Substantial participation requires that a defendant have knowledge of "specific infringing uses of its technology," *Monotype Imaging, Inc. v. Bitstream,*

*Inc.*, 376 F. Supp. 2d 877, 886 (N.D. Ill. 2005), as evidenced by the "ability to monitor or control the [infringing] contents," *Marobie-Fl.*, 983 F. Supp. at 1178–79.

Plaintiff's Complaint fails to adequately allege that DataCamp had knowledge of specific infringing uses of its network. Plaintiff alleges that DataCamp "offers end-to-end assistance" to an array of companies it deems "Pirate Services," and that these alleged Pirate Services "could not do what they are doing" without DataCamp. (Complaint ¶¶ 36–37.) Plaintiff additionally alleges that DataCamp has "actual knowledge of the [alleged] Pirate Services' infringement because of the Infringement Notices" Plaintiff sent to DataCamp. (Complaint ¶ 67.) Plaintiff further alleges that DataCamp "had actual knowledge that the transmission of [protected works] to [end users] infringes DISH's exclusive public performance rights" and that "its subscribers, the [alleged] Pirate services, engaged in repeated and willful copyright infringement." (Complaint ¶ 80.) None of these allegations establish the actual knowledge of "specific infringing" material required to sustain a claim for contributory copyright infringement. *See Monotype Imaging*, 376 F. Supp. 2d at 886.

First, the allegation that DataCamp assists its customers is insufficient to prove contributory infringement. A contributory infringement claim necessitates an allegation that the party had "culpable intent" premised on knowledge of *specific* infringing material. *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934 (2005); *see Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) ("Nothing in [the] complaint alleges, or even suggests, that [defendant] . . . materially contributed to the infringement through purposeful, culpable expression and conduct." (citation omitted)). As here, the "allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to establish [the] claim." *Tarantino v. Gawker Media, LLC*, No. CV 14-603-JFW (FFMx), 2014 WL 2434647, at *3 (C.D. Cal. Apr. 22, 2014).

Not only does Plaintiff fail to allege that DataCamp had specific knowledge of infringing material, but it is not even possible for DataCamp to have such specific knowledge. As Plaintiff itself acknowledges, the alleged Pirate Services "encrypt their streams so that only [their] subscription-paying customers can view them." (Complaint ¶ 39.) Even if DataCamp could view the data passing through the alleged Pirate Services to those companies' customers—which it cannot—DataCamp would be wholly unable to discern what content the data includes or where that data is being routed. It is technologically impossible for DataCamp to have actual knowledge that specific infringing material was available using its network. (*Id.*)

Second, the allegation that notices of infringement sent to DataCamp constitute actual knowledge of specific infringement is contrary to established case law. To be liable, "a computer system operator" must have "*actual* knowledge that *specific* infringing material is available using its system," and have the ability to "take simple measures to prevent further damage to copyrighted works . . . [while] continu[ing] to provide access to infringing works." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (citations omitted). The key aspect is that such knowledge must be related to "specific infringing" material. *Monotype Imaging*, 376 F. Supp. 2d at 886; *accord Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (holding that liability for contributory copyright infringement cannot be based on "generalized knowledge by the [service provider] of the possibility of infringement"). Infringement notices sent to service providers like DataCamp do not constitute "notice of any specific acts of infringement," regardless of the number of notices sent, but instead "gives at most a general knowledge that infringement will likely occur again in the future," *ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 F. App'x 522, 524 (9th Cir. 2020), and are therefore insufficient to sustain a claim for contributory copyright infringement.

Third, Plaintiff's allegation that knowledge of past infringement by end-users of products provided by DataCamp's customers can be imputed onto DataCamp because DataCamp did not "remove or disable access to the content identified in the Infringement Notices," (Complaint ¶ 47), also fails to satisfy the required element of knowledge of specific infringing material. Contributory copyright infringement liability cannot be found "merely based on a failure to take affirmative steps to prevent infringement" absent evidence of intentional infringement. *Plan Pros v. Torczon*, No. 8:08CV136, 2010 U.S. Dist. LEXIS 148765, at *13 (D. Neb. Nov. 17, 2020). Plaintiff has not alleged that DataCamp intentionally contributed to infringement and its argument that DataCamp should disable all services to its customers who have allegedly displayed some infringing material is not a "reasonable means" for a service provider to prevent such infringement. *See Louis Vuitton v. Akanoc*, 658 F.3d 936, 942 (9th Cir. 2011) (determining that although a provider of servers and data center services had direct control over keeping the allegedly infringing websites online and available, because the defendant did not "operate [ ] the servers that hosted the direct infringers' websites," the defendant was left without "reasonable means to withdraw services to the direct infringers" and could not be liable for contributory infringement). To the contrary, a computer system operator such as DataCamp which merely provides a network of servers for its customers, (Complaint ¶ 25), is not liable for contributory infringement where it takes the "simple measure" of forwarding notices of claimed infringement to the alleged infringer, *ALS Scan*, 819 F. App'x at 524. DataCamp has satisfied this requirement, and Plaintiff does not dispute it, acknowledging DataCamp's correspondence that it "forwarded the notice[s] to the responsible customer to remove the infringing content." (Complaint ¶ 55.)

Plaintiff offers a variety of ideas for what DataCamp "could have" done upon receiving its "Infringement Notices," such as "requiring [the alleged Private Services] to verify their rights

before . . . transmitting" their services, "respond[ing] more promptly," "investigat[ing] to determine whether infringement was occurring," or "implement[ing] a multi-strike policy" to "permanently terminat[e]" repeat infringers. (Complaint ¶¶ 59–62.) Plaintiff's suggestions are just that—suggestions—and bear no weight on DataCamp's liability; it is well-established that contributory copyright infringement cannot result "merely based on a failure to take affirmative steps to prevent infringement." *Torczon*, 2010 U.S. Dist. LEXIS 148765, at *13; *see Luvdarts*, 710 F.3d at 1072; *Monotype Imaging*, 376 F. Supp. 2d at 886.

Finally, the Southern District of Florida recently addressed the same claim raised by Plaintiff here against a company operating nearly the same business as DataCamp, dismissing the plaintiffs' claim for contributory copyright infringement with prejudice. In *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, the plaintiff, among other claims, alleged that the defendant—a company which provides servers to businesses and individuals to deliver their content—materially contributed to infringement of its copyrights by failing to prevent its customers from hosting infringing content. No. 21-cv-20862-BLOOM/Otazo-Reyes, 2021 WL 5882999, at *10 (S.D. Fla. Dec. 13, 2021).[4] The court held that plaintiff failed to sufficiently allege that defendant acted with culpable intent because defendant's encryption of its end-users' online activity meant that defendant could not have specific knowledge of infringing activity. *Id.* at *12–13.[5]

Like in *Millenium Funding*, Plaintiff here "notably fail[s] to address [the fact] that [DataCamp's] encryption prevents [it] from knowing specific infringing activity." *Id.* at *12;

---

[4] The Southern District of Florida's order granting the defendant's motion to dismiss is attached as Exhibit 1 to this Motion.

[5] The Plaintiffs in *Millenium Funding* filed a motion for reconsideration following the dismissal of their complaint. The Southern District of Florida's order denying the plaintiffs' motion for reconsideration, and resolving the matter, *see* Notice of Settlement, *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21-cv-20862-BLOOM/Otazo-Reyes (May 5, 2022), Dkt. 221, is attached as Exhibit 2 to this Motion.

(Complaint ¶ 39). Plaintiff has not alleged—and cannot allege—that DataCamp was aware of specific infringing material or that DataCamp did not take the reasonable measure of sending notices of alleged infringement to the alleged Pirate Services and, therefore, its claim for contributory copyright infringement must be dismissed with prejudice.

## C.   Count II of Plaintiff's Complaint for Vicarious Copyright Infringement Fails to State a Claim and Must be Dismissed with Prejudice

"To prevail on a claim for vicarious copyright infringement, a plaintiff must establish that 'the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity.'" *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 824 (N.D. Ill. 2017) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017)).

### 1.   DataCamp Does Not have the Right or Ability to Supervise the Infringing Conduct Alleged by Plaintiff

"For 'vicarious liability to attach, [ ] the defendant must have the right and ability to supervise and control the infringement, not just affect it.'" *Id.* (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 805 (9th Cir. 2007)). "[A] defendant exercises control over a direct infringer when [it] has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). Courts determine whether a defendant has such a practical ability to prevent infringement by "examining the system's current architecture." *Venus Fashions v. ContextLogic, Inc.*, No. 3:16-cv-907-J-39MCR, 2017 WL 2901695, at *25 (M.D. Fla. Jan. 17, 2021) (citation omitted).

Plaintiff fails to allege that DataCamp had the practical ability to supervise the alleged infringement. Plaintiff suggests various ways by which DataCamp "could have" monitored or policed its customers. (Complaint ¶¶ 59–62.) But these suggestions are irrelevant. To state a

viable claim, Plaintiff must show that DataCamp "has the *practical* ability to police the infringing activities of [third parties] as opposed to suggesting measures that are imprecise, overbroad or not workable." *Venus Fashions*, 2017 WL 2901695, at *12 (citation omitted; emphasis added). All of the measures suggested by Plaintiff are either impossible or far too overbroad.

DataCamp does not maintain the ability to monitor its customers' activity as Plaintiff suggests. DataCamp maintains servers which do not operate within a closed system network. (Complaint ¶ 25.) DataCamp maintains no ability to monitor those customers' activities which are entirely encrypted. (Complaint ¶ 39.) And Plaintiff's notion that DataCamp should have simply terminated its customers' accounts, (Complaint ¶¶ 62–63)—when those customers have their own clients who are overwhelmingly engaged in completely legal activity online—is an "imprecise, overbroad [and un]workable" proposition. *Venus Fashions*, 2017 WL 2901695, at *12; *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1093–94 (C.D. Cal. 2001). While such termination would certainly have "the indirect effect of reducing infringing activity on the Internet at large," "the mere ability to withdraw a financial 'carrot' does not create the 'stick' of 'right and ability to control' that vicarious infringement requires." *Visa Int'l*, 494 F.3d at 803.

  2. <u>DataCamp Does Not Receive any Direct Financial Interest from the Infringing Conduct Alleged by Plaintiff</u>

"[A] financial benefit exists where there is evidence of a direct financial gain or that the 'availability of infringing material acts as a draw for customers.'" *GC2*, 255 F. Supp. 3d at 825 (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)). "[N]ot every benefit is a direct financial benefit." *Klein & Heuchan v. CoStar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1299 (M.D. Fla. 2010). The "essential aspect" is "whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *GC2*, 255 F. Supp. 3d at 825 (quoting *Ellison*, 357 F.3d at 1079).

Plaintiff fails to allege that DataCamp has a direct financial interest in the allegedly infringing material. Plaintiff's sole allegation that DataCamp directly benefits from the alleged Pirate Services is that "[t]he Pirate Services are motivated to sign up with, remain with, and pay DataCamp for bandwidth to transmit the Works on the Protected Channels because of Datacamp's lax policy towards infringement." (Complaint ¶ 65.) Plaintiff further alleges this "serv[es] as a draw for Datacamp to attract, retain, and charge more fees to its customers." (Complaint ¶ 89). These threadbare allegations "supported by mere conclusory statements," without any specific factual assertions "do not suffice" to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even taken at face value, allegations that a defendant benefits from alleged infringement by "attract[ing] users" and "increase[ing] the value of [its business]" are "too far removed from the alleged infringement to be considered a 'direct' financial interest." *UMG Recordings, Inc. v. Veoh Networks, Inc.*, No. CV 07-5744 AJM (AJWx), 2009 WL 334022, at *6 (C.D. Cal. Feb. 2, 2009) (citation omitted). Nor is the allegation that a defendant never terminated any of its customers, regardless of the number of notices for infringement it received, relevant to Plaintiff's claim. *See UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. A-17-CA-365-LY, 2018 WL 4501535, at *2–3 (W.D. Tex. Sept. 20, 2018) (determining that short of alleging specific facts that the defendant "gained or lost customers *because of* its failure to terminate infringers," the mere allegation that not terminating infringers serves as a "draw" for the defendant's business is insufficient to state a claim for vicarious infringement).

It is of course no surprise that Plaintiff has not adequately alleged that DataCamp receives a direct financial benefit from the alleged infringements because it cannot. DataCamp receives payments from its customers to utilize its server network, but such payments have no relation to the content, infringing or not, produced by end-users. Plaintiff attempts to find causation where

none exists, suggesting that DataCamp's increased revenue from 2018 to 2020 occurred as a result of "revenues DataCamp earned from the Pirate Services." (Complaint ¶ 69.) But that assertion fails to even allege a simple correlation between allegedly ongoing infringing activity and increased revenue, let alone the required "causal relationship between the infringing activity and any financial benefit a defendant reaps." *GC2*, 255 F. Supp. 3d at 825 (quoting *Ellison*, 357 F.3d at 1079); *accord Zagorsky-Beaudoin v. Rhino Entm't Co.*, No. CV-18-03031-PHX-JAT, 2019 WL 4259788, at *9–10 (D. Ariz. Sept. 9, 2019) (determining that the complaint failed to allege a direct financial benefit where plaintiff failed to adequately allege that defendant's customer base was affected by the alleged infringement).

Finally, in the near-identical *Millennium Funding* case, the plaintiff also claimed that the defendant vicariously infringed its copyrights, including that the defendant derived a direct financial benefit from the infringing activities. 2021 WL 5882999, at *13–14. The court held that plaintiff failed to sufficiently allege that the defendant profited directly from the infringing activity because the defendant "was paid by [its customers] regardless of whether the end users engaged in infringing activities or legitimate activities" *Id.* at *14. Alike *Millenium Funding*, Plaintiff here fails to allege how DataCamp profits directly from infringing activity. (*See* Complaint ¶¶ 65–69.) Plaintiff has not alleged—and cannot allege—that DataCamp has the right and ability to supervise the alleged infringing material or that DataCamp profits directly from those alleged infringements and, therefore, its claim for vicarious copyright infringement must be dismissed with prejudice.

### D.     Plaintiff's Complaint Is Fatally Deficient, Rendering Amendment Futile

Where "it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted," the district court should not grant leave to amend. *Barry Aviation, Inc. v. Land O' Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004); *Garcia v. City of Chi.*,

24 F.3d 966, 970 (7th Cir. 1994) ("A district court does not abuse its discretion in denying leave to amend if the proposed repleading would be futile.").

Here, it is certain that Plaintiff cannot amend its Complaint to allege the necessary elements to state claims that DataCamp committed contributory or vicarious copyright infringement of Plaintiff's alleged protected works. Plaintiff cannot allege that DataCamp had specific knowledge of infringing material because DataCamp has no access to the content made available through its customers, including because that content is encrypted. Plaintiff also cannot allege that DataCamp had the practical ability to supervise the alleged infringing conduct given that the only viable method Plaintiff can suggest to prevent the alleged infringement has been repeatedly determined to be too overbroad as to satisfy the right and ability to control element that vicarious liability requires. Finally, Plaintiff cannot allege that DataCamp profits directly from the presence of allegedly infringing content because DataCamp's customers pay it the same amount regardless of whether their content is infringing or not. Thus, Plaintiff's Complaint should be dismissed with prejudice because there are no amendments Plaintiff could truthfully allege sufficient for relief to be granted on either of Plaintiff's claims.[6]

---

[6] While the Court's focus is limited to the allegations set forth in the Complaint, it should not be lost that permitting such bald and faulty allegations to proceed here also sets a precedent that would encourage similar baseless claims to be raised against other service providers who offer networked server access to the Internet in a manner similar to DataCamp. *See e.g.,* https://metal.equinix.com/; https://aws.amazon.com/; https://www.digitalocean.com/; https://www.fdcservers.net/; https://m247.com/; https://www.leaseweb.com/; https://www.ovhcloud.com/; https://www.psychz.net/; https://www.maxihost.com/; https://www.cherryservers.com/; https://www.hetzner.com/; https://www.worldstream.com/.

## CONCLUSION

WHEREFORE, based upon the foregoing arguments and legal authorities, DataCamp respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Prejudice 12(b)(6).

Respectfully submitted this 5th day of August, 2022.

By: */s/ Robert E. Browne, Jr.*

Robert E. Browne, Jr.
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe St., Ste. 3900
Chicago, IL 60606
312.759.1920
773.877.3739 (Fax)
robert.browne@troutman.com

M. Kelly Tillery*
Sean P. McConnell*
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
215.981.4000
215.981.4750 (Fax)
kelly.tillery@troutman.com
sean.mcconnell@troutman.com
*Pro hac vice applications forthcoming*

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on the 5th day of August, 2022, the foregoing *Defendants' Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint* was served via the Court's ECF filing system to all counsel of record.


Dated: August 5, 2022

By:  */s/ Robert E. Browne, Jr.*

Robert E. Browne, Jr.
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe St., Ste. 3900
Chicago, IL 60606
312.759.1920
773.877.3739 (Fax)
robert.browne@troutman.com