UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 22-cv-00993 |
| | ) |
| DATACAMP LIMITED d/b/a/ | ) Honorable John F. Kness |
| CDN77 and Datapacket, | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant DataCamp Limited d/b/a CDN77 and Datapacket ("DataCamp"), by and through undersigned counsel, respectfully submits this Reply in Support of Its Motion to Dismiss Dish Network L.L.C.'s ("Plaintiff") Complaint.

**I.     INTRODUCTION**

Rather than correct its defective pleading, Plaintiff doubles down on its vexatious strategy to paint an inaccurate picture about DataCamp and its business, namely that DataCamp is intimately involved in infringing Plaintiff's works—knowingly and materially assisting its customers in infringing Plaintiff's copyrighted works fueled by the desire to deepen its pockets—points Plaintiff patently knows are inaccurate. But whether Plaintiff's dramatic telling is based in reality has <u>no</u> <u>bearing</u> on this Motion. Only the contents of the Complaint are relevant here, and Plaintiff's Complaint fails to adequately allege the facts necessary to make out each element of its claims for contributory and vicarious copyright infringement. These deficiencies have not been and cannot be corrected. Thus, the Complaint must be dismissed.

II.    **ARGUMENT**

Plaintiff's Complaint relies on "[t]hreadbare recitals of elements . . . supported by mere conclusory statements," but more is required to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual matter" must be present sufficient to support the necessary elements of each claim. *Id.* Here, the Complaint fails to allege the requisite factual claims for each element of Plaintiff's claims for contributory and vicarious copyright infringement.

A.    **Plaintiff Ignores Its Knowing Conflation of DataCamp's Distinct Business Lines and Wholly Misconstrues the Abilities of DataCamp to Monitor Alleged Infringements**

Despite that it has been fully aware for some time that DataCamp operates two distinct and unrelated businesses (CDN77 and DataPacket), and that such businesses offer wildly divergent services to different classes of consumers, Plaintiff continues to rely on the Complaint's bald allegations that make no meaningful distinctions between these businesses. Plaintiff's Response does nothing to correct or even address these inaccuracies, (*see* Motion at 3–4, 6), which underpin the entirety of Plaintiff's Claims.[1] Further, Plaintiff's contention that the defendant in *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, is "[u]nlike DataCamp" is entirely untrue. (Resp. at 3.)[2]

B.    **Plaintiff's Complaint Fails to Allege that DataCamp had Knowledge of Specific Infringing Uses of Its Network**

The Complaint fails to adequately allege any "material contribut[ion]" by DataCamp "to the [alleged] infringing conduct" of its customers. *Myers v. Harold*, 279 F. Supp. 3d 778, 796

---

[1] To the extent Plaintiff continues to ignore known facts and, thus, mislead the Court, DataCamp will pursue its reasonable attorneys' fees. *See* 17 U.S.C. § 505.

[2] DataCamp's Motion does not, as it cannot, rely on facts or evidence outside the Complaint. However, the record should note the following which was brought to the attention of Plaintiff as early as March 2022: DataCamp is virtually identical to the defendant in *Millennium Funding*. Like that defendant, DataCamp operates servers which it leases to customers who can, may, and often do sell or re-lease that server space to their own customers. DataCamp *is* "two steps removed from the direct infringers," (*contra* Resp. at 3), maintaining no ability to monitor alleged infringements from the many direct infringers with whom DataCamp maintains no contact.

2

(N.D. Ill. 2017) (citation omitted). To allege a material contribution, a plaintiff must allege facts eliciting that the defendant had knowledge of specific infringing uses of its network, *see Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 886 (N.D. Ill. 2005), but here the Complaint at most only alleges DataCamp "provided the means to accomplish an infringing activity" which "is insufficient to establish [a] claim [for contributory infringement]." *Tarantino v. Gawker Media, LLC*, No. CV 14-603-JFW (FFMx), 2014 WL 2434647, at *3 (C.D. Cal. Apr. 22, 2014); (*see* Compl. ¶¶ 36–37, 80). Plaintiff's ambiguous allegations about infringement notices it sent to DataCamp, (Compl. ¶ 47), are of no avail because they fail to provide DataCamp with "*actual* knowledge that *specific* infringing material is available using its system," *Perfect 10, Inc. v. Amazon.com*, 508 F.3d 1146, 1172 (9th Cir. 2007) (citations omitted).[3]

1. The Complaint Fails to Plead Facts Showing that Plaintiff Notified DataCamp of "Specific Infringing Material"

A claim for contributory infringement requires that a defendant has been noticed of "specific acts of infringement," not merely "general knowledge that infringement [occurred and] will likely occur again in the future." *ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 F. App'x 522, 524 (9th Cir. 2020). Where a complaint "contains no facts" illustrating actual knowledge of specific infringing material, plaintiff's claim must be dismissed. *Bell v. Chicago Cubs Baseball Club, LLC*, No. 19-cv-2386, 2020 WL 550605, at *4 (N.D. Ill. Feb. 4, 2020).

---

[3] Plaintiff urges a different definition for contributory infringement: "personal conduct that encourages or assists the infringement." (Resp. at 4 (quoting *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012)). But, as the Seventh Circuit acknowledges, this definition is merely a "succinct" rendition of the more commonly known definition: "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Flava*, 689 F.3d at 757 (citation omitted). Not only does the Seventh Circuit decline to alter any of the elements necessary to make out the claim, but it cites to *Perfect 10, Inc. v. Amazon.com* for this supposedly new definition, which explicitly holds that "*actual* knowledge" of "*specific* infringing material" available on a defendant's system is required to make a claim for contributory copyright infringement. 508 F.3d at 1172.

Here, Plaintiff's Complaint falls short of making out this necessary element. Plaintiff asserts it sent DataCamp numerous infringement notices of "specific infringements," (Resp. at 4–5), but its Complaint only alleges it generally sent notices of infringement to DataCamp, absent any specific detail regarding what works were infringed, by whom, and when and where the infringements took place, (*see* Compl. ¶¶ 6 (general statement regarding "hundreds of notices"), 7, 24 (notice regarding "that respective Pirate Service" without notice of specific copyright being infringed), 52 (listing generic contents of notices), 53 (listing alleged Pirate Services for which Plaintiff sent notices), 54–55, 57 (stating that DataCamp responded to the notices), 56 (screenshot of notice allegedly sent to DataCamp without date of infringement, notice of copyright being infringed, and other key details)). Plaintiff's attempts to remedy the deficiencies of its Complaint by supplying additional factual allegations in its Response, (*see* Resp. at 8 n.3), are improper and may not be considered. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (acknowledging the "axiomatic rule that a plaintiff may not amend [its] complaint in [its] response brief" to a motion to dismiss).

Moreover, the cases Plaintiff cites in support of the adequacy of its Complaint actually point out the Complaint's key flaw: the lack of *specific detailed notices* to state a claim for contributory infringement. *See In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 650 (N.D. Ill. 2002) (finding defendants knew or should have known of the infringement based on the notices sent to defendant and attached to plaintiff's motion which detailed the specific copyrighted works of plaintiff which were currently available on defendant's file sharing platform); *Flava Works Inc. v. Gunter*, No. 10 C 6517, 2011 WL 1791557, at *4 (N.D. Ill. May 10, 2011) (denying defendant's motion to dismiss plaintiff's contributory copyright claim in part because "[t]he DMCA notices attached to the complaint identify specific infringing files and users as well as specific repeat

4

infringers"); *Sony Music Entm't v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 231 (E.D. Va. 2019) (finding the notices supplied to the court contained the necessary level of specificity to provide defendant with "the requisite knowledge" to support a contributory infringement claim because the notices informed the defendant of the work being infringed, and "include[d] variables such as the timestamp of the infringement detection, the date the notice was sent, the NoticeID, the [ ] user (identified by IP address and Port), and a hash value pertaining to the file" (citation omitted)).

Plaintiff further asserts DataCamp has "mischaracterize[ed]" *ALS Scan, Inc. v. Steadfast Networks, LLC* because the case did not concern "the defendant's knowledge of infringement." (Resp. at 5–6.) But in *ALS Scan* the Ninth Circuit indeed noted that "the number of notices is legally irrelevant" because "the knowledge required is more than a generalized knowledge." *ALS Scan*, 819 F. App'x at 523–24. Plaintiff's allegation that it sent DataCamp four-hundred notices "does not give [DataCamp] notice of any specific acts of infringement." *Id.* at 524.

    2.    <u>Plaintiff Fails to Allege that DataCamp Had the "Ability to Monitor or Control the Infringing Content" or Even that the Infringers Are Customers of CDN77</u>

Plaintiff also fails to allege that DataCamp had the "ability to monitor or control the [infringing] contents. *Marobie-Fl., Inc. v. Nat. Ass'n of Fire Equip. Distribs.*, 983 F. Supp. 1167, 1178 (N.D. Ill. 1997). Plaintiff makes much of the services it claims DataCamp offers to its customers which would allow it such control, citing to the CDN77 website for each allegation, (*see* Resp. at 7; *see also* Mot. at 3–4 nn.2–3), but nowhere in its Complaint does it allege—because it cannot—that any of the alleged Pirate Services used those services or were customers of CDN77. DataCamp made this same point in its Motion, (Mot. at 3 n.2) and the Response declined to address it, thereby conceding the Complaint fails to contain facts necessary for a contributory infringement claim. *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates

5

as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim.") (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n. 1, 721 (7th Cir.2011)).

C. **Plaintiff's Complaint Fails to Allege Any Causal Relationship Between the Alleged Infringement and a Direct Financial Benefit, Nor Does the Complaint Allege that DataCamp Had the Practical Ability to Prevent the Allegedly Infringing Conduct**

Plaintiff's Complaint fails to allege either "evidence of a direct financial gain" by DataCamp from the alleged infringement or that the "availability [to] infring[e] [ Plaintiff's copyrighted works] acts as a draw for customers." *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 825 (N.D. Ill. 2017) (citation omitted). The Complaint instead merely alleges facts illustrating that DataCamp was "paid by [its customers] regardless of whether the . . . activities [were infringing] or legitimate." *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1215 (S.D. Fla. 2022). Plaintiff likewise fails to adequately allege that DataCamp had the "practical ability" to stop the alleged directly infringing conduct. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); *GC2*, 255 F. Supp. 3d at 824. Rather, the Complaint alleges a variety of ideas Plaintiff believes DataCamp could have taken to curb any infringement, (Compl. ¶¶ 59–62), but Plaintiff's "imprecise, overbroad[,] [and] [un]workable" suggestions do not establish a claim for vicarious infringement, *Venus Fashions v. ContextLogic, Inc.*, No. 3:16-cv-907-J-39MCR, 2017 WL 2901695, at *12 (M.D. Fla. Jan. 17, 2021) (citation omitted).

  I. **Plaintiff Fails to Allege that DataCamp Receives any Direct Financial Interest from the Allegedly Infringing Conduct**

Plaintiff correctly points out that the "the essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *GC2*, 255 F. Supp. 3d at 824 (citation omitted; cleaned up). But Plaintiff fails to plead any facts that support the existence of such a causal relationship. Merely stating that "DataCamp experienced a direct financial gain" or that "DataCamp charged the Pirate

6

Services based on the bandwidth they consumed," (Resp. at 11 (citing Compl. at ¶¶ 65, 75)), are not facts eliciting a causal relationship. Rather, these are "mere conclusory statements" which "do not suffice" to state a claim for vicarious copyright infringement, *see Iqbal*, 556 U.S. at 678. The rest of Plaintiff's "facts" are entirely speculative guesses as to how DataCamp's profits might fluctuate "[i]f DataCamp removed . . . [or] geoblocked the Protected Channels." (Compl. ¶ 68.)

Not only do Plaintiff's theories not constitute "factual matter" required to maintain a claim, *Iqbal*, 556 U.S. at 678, but even in if supported they are also wholly unsound. Plaintiff alleges that "DataCamp charge[s] customers more as their bandwidth consumption increases," but as Plaintiff concedes bandwidth consumption is not tied to whether a customer produces infringing content ("[t]he amount of bandwidth the Pirate Services use is [instead], a function of the number of Service Users [the Pirate Services] have."). (Compl. ¶ 68.) Thus, even if DataCamp removed the allegedly infringing content, that has no "direct" effect on the alleged Pirate Service's continued use of DataCamp's servers or their level of bandwidth consumption in transmitting all of their other content to their own end users. *See GC2*, 255 F. Supp. 3d at 824. At most, per Plaintiff's own words, DataCamp reaps some *indirect* financial benefit from its customers alleged infringement. (Compl. ¶ 68). But that benefit is not "casual[ly]" linked to any "direct financial gain" realized by DataCamp, *see GC2*, 255 F. Supp. 3d at 824; *accord Millennium Funding*, 576 F. Supp. 3d at 1215, nor is it supported by any facts in the Complaint.

The two cases cited by Plaintiff are also inapposite. In *In re Aimster Copyright Litigation*, the defendant was a file sharing platform allowing users to send messages and transfer encrypted files containing the plaintiffs' works. 252 F. Supp. 2d at 638. Because the defendant charged its customers a monthly fee specifically for access to a platform to share and procure copyrighted works, this court found that "without question" the defendant received a direct financial interest in

7

the infringing activities of its users. *Id.* at 655. That is a far cry from Plaintiff's allegations here, however, because DataCamp receives payments from its customers not to obtain and share copyrighted works (as in *Aimster*), but for use of DataCamp's servers regardless of the content, infringing or not. In *GC2 Inc. v. International Game Technology PLC*, the defendants were sellers of online casino games. 255 F. Supp. 3d at 816–17. This court held that the complaint properly alleged that defendants "received a direct financial benefit from the infringement" because they "s[old] consumers games containing [plaintiff's] artwork despite the fact that they d[id] not have a license from [plaintiff] to sell its artwork." *Id.* at 825. Unlike in *G2C*, Plaintiff's Complaint here does not allege that DataCamp produced or sold Plaintiff's copyrighted works.

Plaintiff's Complaint also fails to adequately allege that the "infringing material acts as a draw for [DataCamp's] customers." *GC2*, 255 F. Supp. 3d at 825.[4] Plaintiff suggests that this court in *Flava Works, Inc. v. Gunter* has already rejected DataCamp's proffered standard that to plead that the infringing activity acted as a draw to customers "Plaintiff[ ] [must] plead facts showing [DataCamp] gained or lost customers *because of* its failure to terminate infringers, (Mot. at 12 (citing *UMG Recordings, Inc. v. Grande Commc'ns Networks*, No. A17-CA-365-LY, 2018 WL 4501535, at *2–3 (W.D. Tex. Sept. 20, 2018)). However, the *Flava* court only accepted that plaintiff's position because the "Defendants [there] cite[d] no case law in support" of their position, *Flava Works*, 2011 WL 1791557 at *5. Unlike the defendants in *Flava*, however, DataCamp now provides support for its position, *see Grande Commc'ns*, 2018 WL 4501535, at *2–3; *UMG Recordings, Inc. v. Veoh Networks, Inc.*, No. CV 07-5744 AJM (AJWx), 2009 WL 334022, at *6

---

[4] If the Court finds that Plaintiff's Complaint fails to allege that DataCamp derived a direct financial benefit from the infringing activity, it "need not address" whether Plaintiff adequately alleged the infringing activity acted as a "draw" for DataCamp's business. *See Millennium Funding*, 576 F. Supp. 3d at 1215 n.18.

(C.D. Cal. Feb. 2, 2009) (determining that allegations that defendant "attract[ed] users" or "increase[d] the value of [its business]" are "too far removed from the alleged infringement to be considered a 'direct' financial interest"),[5] which negates any minimal persuasive value the unpublished dicta in *Flava* may offer Plaintiff (who provides no other support for its position).

Regardless, even under a more relaxed standard, the Complaint fails to clear the bar. Plaintiff's only allegation on this score is that "[t]he Pirate Services are motivated to become DataCamp subscribers due to their knowledge that they can publicly perform the Works without interference from DataCamp." (Compl. ¶ 88; *see* ¶¶ 4–5, 64–66.) Like with Plaintiff's claim for contributory infringement, these "mere conclusory statements" "do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. Moreover, Plaintiff's attempts to create legal theories regarding the alleged Pirate Services becoming and/or remaining as customers of DataCamp because of their ability to infringe Plaintiff's works through DataCamp's servers do not qualify as "factual matter." *Id.*

II. <u>Plaintiff's Complaint Fails to Allege that DataCamp Has the Ability to Directly Control the Alleged Infringing Activity</u>

Plaintiff is incorrect regarding the facts necessary to establish that a defendant has the "practical ability" to "stop or [ ] limit the [allegedly] directly infringing conduct." *Amazon.com*, 508 F.3d at 1173. Plaintiff claims that the "carrot and stick analogy" from *Perfect 10, Inc. v. Visa International Service Association* is inapplicable because Visa "merely processed payments for an infringer." (Resp. at 13 n.7.) But Plaintiff's Complaint here alleges conduct by DataCamp which mirrors the involvement and control exhibited by Visa. Like Visa, DataCamp "could likely take certain steps that may have the indirect effect of reducing infringing activity," *Perfect 10, Inc. v.*

---

[5] Plaintiff contends that DataCamp misstates *UMG Recordings, Inc. v. Veoh Networks, Inc.* because the defendants at issue there were investors, (Resp. at 13 n.6), but that does not change the court's holding that merely "alleg[ing] that the alleged infringement continued to attract users" is insufficient to state a claim for vicarious infringement, *Veoh Networks*, 2009 WL 334022, at *6.

9

*Visa Int' Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007), such as Plaintiff suggests, (Compl. ¶ 62–64). But those efforts would not provide DataCamp with "any ability to directly control that activity." *Visa*, 494 F.3d at 803. Nor does Plaintiff's Complaint even suggest it could because shutting off DataCamp's servers to a customer would not remove the customer's allegedly infringing content from the internet it would merely cause a disruption in the quality of the customer's product to its own end users, just as Visa terminating its payment processing would have had on the direct infringers in that case. *Id.* (determining that vicarious liability "requires" more than "the mere ability to withdraw a financial 'carrot,'" because that alone "does not create the 'stick' of 'right and ability to control'"). Plaintiff's allegation that it would be "impossible" for direct infringers to "compete and operate" were DataCamp to terminate them from its servers "still fails to state a claim because it conflates the power to stop profiteering with the right and ability to control infringement." *Compare id.* at 805–06, *with* (Compl. ¶ 37).

### III. CONCLUSION

WHEREFORE, based upon the foregoing arguments and legal authorities, DataCamp respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

Date: September 16, 2022

Respectfully submitted,

*/s/Robert E. Browne, Jr.*

| | |
|---|---|
| M. Kelly Tillery (*pro hac vice*) | Robert E. Browne, Jr. |
| Sean P. McConnell (*pro hac vice*) | Schuyler C. Davis |
| TROUTMAN PEPPER HAMILTON SANDERS LLP | TROUTMAN PEPPER HAMILTON SANDERS LLP |
| 3000 Two Logan Square | 227 W. Monroe Street |
| 18th and Arch Streets | Suite 3900 |
| Philadelphia, PA 19103 | Chicago, IL 60606 |
| 215.981.4000 | Tel: 312 759.1920 |
| 215.981.4750 (Fax) | 773.877.3739 (Fax) |
| kelly.tillery@troutman.com | robert.browne@troutman.com |
| sean.mcconnell@troutman.com | schuyler.davis@troutman.com |

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on the 16th day of September, 2022, the foregoing *Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Complaint* was served via the Court's ECF filing system to all counsel of record.

Dated: September 16, 2022

By:  */s/ Robert E. Browne, Jr.*

Robert E. Browne, Jr.
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe St., Ste. 3900
Chicago, IL 60606
312.759.1920
773.877.3739 (Fax)
robert.browne@troutman.com